UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DIRECT COMPONENTS, INC.,

    Plaintiff,

v.                     Case No. 8:23-cv-1617-VMC-SPF

MICROCHIP USA, LLC, et al.,

    Defendants.

_____/

**ORDER**

This matter comes before the Court upon consideration of Defendants Microchip USA LLC, Trevor Toma, Jeff Ruby, Joshua Arnold, Jake Lawless, Alexander Hart, Mitchell Kogge, Tyler Ayala, Paul Venzor, Thomas Andrew Van de Motter, Kimie Koga, John Brown, and Michael Prusik's Motion to Dismiss Complaint or for More Definite Statement (Doc. # 27), filed on September 8, 2023. Plaintiff Direct Components, Inc. filed an amended response to the Motion on September 29, 2023. (Doc. # 36). For the reasons set forth below, the Motion is granted.

**I.   Background**

Plaintiff initiated this action on July 18, 2023, alleging nine claims against Microchip USA, LLC ("Microchip USA") and thirteen of Plaintiff's former employees and contractors, Trevor Toma, Jeff Ruby, Joshua Arnold, Jake

Lawless, Alexander Hart, Mitchell Kogge, Tyler Ayala, Paul Venzor, Thomas Andrew Van de Motter, Kimie Koga, John Brown, Joseph Centrone, and Michael Prusik. (Doc. # 1).[1] Plaintiff filed an amended complaint alleging the same nine claims on July 24, 2023. (Doc. # 9). In the complaint, Plaintiff alleges misappropriation of Plaintiff's trade secrets, among other related claims. (Id. at ¶¶ 66-157).

Plaintiff "purchase[s] and sell[s] electronics components such as microchips, integrated circuits, and semiconductors from numerous vendors to various national and international customers — including original equipment manufacturers — who require specialized components for their own respective products." (Id. at ¶ 22). This industry is highly competitive. (Id. at ¶ 24). "[Plaintiff's] business relies heavily on its technical experience, business acumen, along with the relationships [the company] forms with its customers and vendors." (Id. at ¶ 25). As such, Plaintiff has invested heavily in developing relationships with both customers and vendors. (Id. at ¶ 36). In particular, "[r]elationships with reliable wholesale microchip vendors .

_____

[1] Plaintiff later voluntarily dismissed its claims against Defendant Centrone without prejudice. (Doc. # 14).

2

. . are very time-consuming to develop since such vendors only conduct business with a few select parties like [Plaintiff]." (Id. at ¶ 27).

As part of its work, Plaintiff alleges that it has "confidential and/or proprietary information and/or trade secrets," including:

> (a) information identifying or tending to identify any of DCI's existing or prospective customers and vendors; (b) DCI's intellectual property, methods, call or sales scripts, workflows, processes, procedures, concepts, inventions, recordings, advertising and promotional materials, computer programs, software, or code — whether or not protected under any law; (c) DCI's business and marketing plans, methods, services, procedures, and techniques; (d) DCI's financial information, pending and completed sales information, product pricing, pricing sliders, market analyses, product costing, customer or vendor purchase or order histories, product quotes, and financial forecasts and projections of DCI, and (e) any of the various electronic or operational systems that DCI utilizes.

(Id. at ¶ 38).

Plaintiff also relies upon a customer relations management software platform, the ZoHo™ platform, to streamline its operations. (Id. at ¶ 31). "On information and belief, the ZoHo™ platform" is relatively new and "relatively few companies utilize [it] in the manner that [Plaintiff] does, and there are few national or international companies that create custom code for the ZoHo™ platform." (Id. at ¶

32).  Plaintiff,  through  its  employees,  has  expended significant effort making "thousands of lines of custom code modifications to its version of the ZoHo™ platform." (Id. at ¶¶ 33-34).

Plaintiff  has  also  taken  various  steps  to  protect  its business  interests,  including  by  "entering  into  restrictive covenant  agreements  that  include  confidentiality,  non-disclosure,  non-competition,  and/or  non-solicitation provisions with certain employees." (Id. at ¶ 42). Employees are  also  provided  with  handbooks  that  describe  policies regarding  "use  and  disclosure  of  .  .  .  confidential information  and  trade  secrets  .  .  .  ,  unauthorized  use  of computers,  theft  of  [Plaintiff's]  property,  the  appropriate business  use  of  the  internet  and  email  system,  and  the safeguarding  of  customer  and  potential  customer  personal information." (Id. at ¶ 43). Plaintiff further requires that employees "use electronic credentials and passwords" before connecting  to  company  systems,  such  as  the  ZoHo™  platform. (Id. at ¶ 44).

Many of the individual Defendants signed agreements with Plaintiff that included restrictive covenants. Toma, Ruby, Arnold, Lawless, Hart, Kogge, Ayala, Venzor, Koga, and Prusik all  signed  Mutual  Non-Disclosure  &  Confidentiality

4

Agreements. (Id. at ¶ 46). These agreements included language defining confidential information to include a wide range of information, including "trade secrets, . . . supplier and customer lists, employee information, . . . and business documents and forms." (Id. at ¶ 47). Similarly, Brown signed an agreement in which he committed to maintain the confidentiality of Plaintiff's "financial data, proprietary information, policy information, company documents and business documents and [which] prohibit[ed] him from disclosing such information after his separation." (Id. at ¶ 48). Additionally, Prusik signed a similar document called "Confidentiality, Nonsolicitation, and Non-Competition Agreements" with Plaintiff. (Id. at ¶ 49). This agreement includes provisions prohibiting Prusik from retaining Plaintiff's materials after termination or disclosing trade secrets, proprietary data, or other confidential information. (Id. at ¶ 50). It also provides that

> [d]uring the period that [Prusik] is employed by
> [Plaintiff], and for a period of two years after
> termination of the employment for any reason,
> [Prusik] shall not, directly or indirectly, own,
> manage, operate, control or participate in the
> ownership, management, operation or control of, or
> be connected as an officer, employee, partner,
> director, agent, or otherwise with, or have any
> financial interest in, or aid or assist anyone else
> in the conduct of, any business of the type

> conducted by the Company or that competes with the
> Company in the United States or Canada . . . .

(Id.).

Microchip USA was founded in October 2021 by former
employees of Plaintiff, "including Toma, Arnold, Lawless,
Hart, Kogge, Ayala, Van de Motter, and Venzor, and who left
[Plaintiff's employ] _en masse_ with other employees and
contractors of [Plaintiff], including Ruby and Koga," around
that time. (Id. at ¶ 53). "Upon information and belief, and
just like [Plaintiff], Microchip USA sells electronics
components, primarily microchips, integrated circuits, and
semiconductors, and its customers include manufacturers that
require these specialized components for their products . .
. ." (Id. at ¶ 55). Therefore, Plaintiff asserts that
Microchip is a direct competitor. (Id.).

"Upon information and belief, one or more owners and
managers of Microchip USA — including, but not limited to,
Toma and Lawless — misappropriated from [Plaintiff] its
confidential and/or proprietary information . . . ." (Id. at
¶ 56). Plaintiff provides a nonexclusive list of this
information, including, among others, databases containing
Plaintiff's customer and vendor lists, employee sales data,
contract and template documents, and telephone account

information used to call customers and vendors. (Id.). "Upon information and belief," Microchip also uses the ZoHo™ platform and "may be utilizing [it] in the substantially same manner as [Plaintiff]." (Id. at ¶ 57). Further, "[u]pon information and belief," Defendants used Plaintiff's trade secrets and confidential or proprietary information to solicit and obtain business from customers and vendors who previously worked with Plaintiff. (Id. at ¶ 60). As a result, these entities reduced or terminated their business with Plaintiff starting in late 2021. (Id.).

Additionally, "[u]pon information and belief," Microchip USA and/or the individual Defendants solicited and hired away or contracted with former employees and contractors of Plaintiff, including Defendants Prusik and Brown. (Id. at ¶ 61). "Upon information and belief," Defendants knew or with reasonable due diligence would have known that the individuals it solicited away had restrictive covenant agreements with Plaintiff. (Id. at ¶ 62).

Since discovering Defendants' actions, Plaintiff has sought to mitigate harms and protect its trade secrets, confidential and proprietary information, as well as address the solicitation of its employees, customers, and vendors. (Id. at ¶ 64).

7

Plaintiff's amended complaint alleges nine claims: (1) misappropriation of trade secrets in violation of the Defend Trade Secrets Act by all Defendants, (2) misappropriation of trade secrets in violation of the Florida Uniform Trade Secrets Act by all Defendants, (3) breach of contract for disclosure of confidential information by all individual Defendants except Van de Motter, (4) breach of contract for violation of non-competition provisions by Prusik, (5) tortious interference with Plaintiff's advantageous business relationships by all Defendants, (6) tortious interference with Plaintiff's enforceable restrictive covenant agreements by all Defendants, (7) breach of the duty of loyalty by certain individual Defendants, including Prusik, (8) aiding and abetting the breach of the duty of loyalty by Microchip USA, and (9) violation of the Florida Deceptive and Unfair Trade Practices Act by Microchip USA. (Id. at ¶¶ 66-157). On September 8, 2023, Microchip USA, Trevor Toma, Jeff Ruby, Josh Arnold, Jake Lawless, Alex Hart, Mitchell Kogge, Tyler Ayala, Paul Venzor, Drew Van de Motter, Kimie Koga, John Brown, and Michael Prusik moved to dismiss the complaint or for a more definite statement. (Doc. # 27). Plaintiff responded on September 29, 2023. (Doc. # 36). The Motion is now ripe for review.

## II.  **Legal Standard**

On a motion to dismiss pursuant to Rule 12(b)(6), this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, the Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990). But,

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The Court must limit its consideration to well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed. La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004).

9

Pleadings may be made based on "information and belief." SCOMA Chiropractic, P.A. v. Jackson Hewitt Inc., No. 2:17-cv-24-SPC-CM, 2017 WL 3149360, at *4 (M.D. Fla. July 25, 2017) (citing Daisy, Inc. v. Pollo Operations, Inc., No. 2:14-cv-564-SPC-CM, 2015 WL 1418607, at *5 (M.D. Fla. Mar. 27, 2015)). Such pleadings may be particularly appropriate when the "information [is] peculiarly within the possession and control of Defendants." Functional Prods. Trading, S.A. v. JITC, LLC, No. 1:12-cv-355-WSD, 2014 WL 3749213, at *8 (N.D. Ga. July 29, 2014).

However, "the 'belief' must be 'based on factual information that makes the inference of culpability plausible.'" SCOMA Chiropractic, P.A., 2017 WL 3149360, at *4 (citing Daisy, Inc., 2015 WL 1418607, at *5). "[T]he Court need not accept as true any conclusory allegations in the complaint based 'upon information or belief' unless the complaint contains enough well-pleaded factual allegations to state a claim for relief that is plausible on its face." Sellstate Realty Sys. Network, Inc. v. Black, No. 2:20-cv-414-JLB-NPM, 2021 WL 354169, at *2 (M.D. Fla. Feb. 2, 2021). Therefore, "the Court must separate conclusory allegations from well-pleaded ones and determine if the well-pleaded

allegations (accepted as true) give rise to a claim for relief." Id. at *3.

### III. **Analysis**

Defendants seek to dismiss Counts I-VIII of the complaint, as well as the punitive damages claim in Count IX. (Doc. # 27).

### A.   **Reliance on "On Information and Belief"**

Defendants' arguments regarding Counts I-IV and VII-VIII center on Plaintiff's use of the qualification "on information and belief" in its allegations against Defendants. (Id.). Defendants argue that the complaint overuses this language and that "dismissal is ultimately required because the allegations made only on suspicion are the material elements of Plaintiff's claims." (Id. at 4). Plaintiff counters that, for the purposes of a motion to dismiss, the Court should treat as true all factual allegations made "on information and belief," such that Plaintiff has sufficiently pled its claims. (Doc. # 36 at 6). Plaintiff asserts that it relied on this qualification because the relevant information is within Defendants' possession and, as a result, Plaintiff "does not know the entire extent of the . . . misconduct." (Id. at 8).

### 1.   <u>Counts I and II (Defend Trade Secrets Act and Florida Uniform Trade Secrets Act)</u>

In Counts I and II, Plaintiff alleges that all Defendants misappropriated trade secrets in violation of the Defend Trade Secrets Act and the Florida Uniform Trade Secrets Act. (Doc. # 9 at ¶¶ 66-103). To plead a violation of the Defend Trade Secrets Act, a plaintiff must allege that "(1) the plaintiff owns a valid trade secret; (2) the trade secret relates to a product or service used in, or intended for use in, interstate commerce; and (3) the defendant misappropriated that trade secret." <u>It Works Mktg., Inc. v. Melaleuca, Inc.</u>, No. 8:20-cv-1743-KKM-TGW, 2021 WL 1650266, at *7 (M.D. Fla. Apr. 27, 2021). Claims under the Florida Uniform Trade Secrets Act generally share the same elements as claims under the Defend Trade Secrets Act. <u>Id.</u>

In Count I, Plaintiff alleges that it owns valid trade secrets and that these trade secrets "are related to a product or service used in, or intended for use in, interstate or foreign commerce." (Doc. # 9 at ¶¶ 67-72).

While Plaintiff also concretely alleges that the individual Defendants knew that "they had a duty to maintain the secrecy of and not disclose or misappropriate DCI's trade secrets" (<u>Id.</u> at ¶ 73), all allegations that Defendants

misappropriated or disclosed Plaintiff's trade secrets are made upon information and belief. E.g., (Id. at ¶ 76) (alleging, "[u]pon information and belief," that "the Individual Defendants misappropriated DCI's trade secrets, or appropriated them without authorization"); (Id. at ¶ 79) (alleging, "[u]pon information and belief," that "the Defendants used or conspired to use DCI's confidential information or trade secrets to solicit DCI's actual and prospective customers and vendors to purchase competitive products through Microchip USA"). The information provided is not sufficient to state a plausible claim. See Sellstate Realty Sys. Network, Inc., 2021 WL 354169, at *2 ("The amended complaint contains no specific facts to support Sellstate's allegations that Ms. Black failed to report sales or pay franchisor fees—it merely states that Ms. Black did these things upon information and belief. Without any well-pleaded facts to accept as true, the Court has no idea how plausible Sellstate's 'belief' might be.").

Importantly, the Court cannot take these allegations as true because Plaintiff also pleaded many foundational allegations on information and belief. For example, the complaint only alleges upon information and belief that Microchip USA is a direct competitor of Plaintiff. (Doc. # 9

13

at ¶ 55). Similarly, it alleges upon information and belief that Microchip USA uses the ZoHo™ platform and "may be utilizing" it in a similar way as does Plaintiff. (<u>Id.</u> at ¶ 57). The Court recognizes Plaintiff's concern that it does not know the entire extent of Defendants' alleged misconduct (Doc. # 36 at 7-8). However, Plaintiff may present the facts within its possession that support each claim while still acknowledging this limitation.

Because Plaintiff's allegations in Count II regarding misappropriation and disclosure are similar to those in Count I (Doc. # 9 at ¶¶ 93-100), Plaintiff has also not provided sufficient factual information to plausibly state a claim under the Florida Uniform Trade Secrets Act.

Therefore, Counts I and II are dismissed without prejudice.

> **2.   <u>Counts III and IV (Breach of Contract for Disclosure of Confidential Information and Non-Competition)</u>**

In Counts III and IV, Plaintiff alleges two breach of contract claims. (<u>Id.</u> at ¶¶ 104-18). First, Plaintiff alleges breach of contract for disclosure of confidential information by Toma, Ruby, Arnold, Lawless, Hart, Kogge, Ayala, Venzor, Koga, Brown, and Prusik. (<u>Id.</u> at ¶¶ 104-11). Second, Plaintiff alleges breach of non-compete restrictive covenants by

Prusik. (Id. at ¶¶ 112-18). To plead breach of contract under
Florida law, a plaintiff must allege that (1) a contract
exists, (2) Defendant materially breached the contract, and
(3) damages resulted from the breach. Ramirez v. Raptor Tech.
Grp., Inc., No. 5:12-cv-100-MMH-TBS, 2012 WL 2589256, at *3
(M.D. Fla. June 8, 2012).

In Count III, Plaintiff alleges the existence of
agreements signed by the named Defendants that prohibit
disclosure of confidential information. (Doc. # 9 at ¶¶ 105-
07). Similarly, in Count IV, Plaintiff alleges that Prusik
signed an enforceable agreement with a non-compete provision.
(Id. at ¶¶ 113-14).

However, all allegations relating to violation of the
contracts in the counts are made "[u]pon information and
belief." (Id. at ¶¶ 109-10, 116-17). This poses the same
challenge as in Counts I and II. Plaintiff must allege
sufficient factual information to plausibly state a claim
that Defendants violated their contracts. See Sellstate
Realty Sys. Network, Inc., 2021 WL 354169, at *2 ("[T]he Court
need not accept as true any conclusory allegations in the
complaint based 'upon information or belief' unless the
complaint contains enough well-pleaded factual allegations to
state a claim for relief that is plausible on its face.").

15

While the full extent of any breach may be unknown, Plaintiff does not provide sufficient factual information for the Court to take its allegations of breach as true. As above, because foundational facts are alleged on information and belief, the Court cannot take Plaintiff's allegations of breach, also made upon information and belief, as true.

Therefore, Counts III and IV are dismissed without prejudice.

### 3. Counts VII and VIII (Breach of Duty of Loyalty and Aiding and Abetting the Breach of Duty of Loyalty)

Defendants also argue that Count VII for breach of duty of loyalty by individual Defendants and Count VIII for aiding and abetting the breach of duty of loyalty by Microchip USA must be dismissed because Plaintiff alleges a breach of duty of loyalty "[u]pon information and belief." (Doc. # 27 at 15-16).

An employee breaches their duty of loyalty when they "engage in disloyal acts in anticipation of [their] future competition, such as using confidential information acquired during the course of [their] employment or soliciting customers and other employees prior to the end of [their] employment." Furmanite Am., Inc. v. T.D. Williamson, Inc., 506 F. Supp. 2d 1134, 1149 (M.D. Fla. Apr. 11, 2007). The

complaint alleges that the individual Defendants, including Prusik, had fiduciary duties of loyalty to Plaintiff. (Doc. # 9 at ¶ 138). Specifically, these Defendants had duties "not to actively use their respective positions for their own personal benefit, or for the benefit of other companies such as Microchip USA, and/or to hinder [Plaintiff's] ability to succeed in its business operations." (Id.). However, Plaintiff's only allegation of a breach of this duty is made "[u]pon information and belief." (Id. at ¶ 142). As with the counts previously discussed, the factual information provided is not sufficient for the Court to take this allegation as true. Plaintiff must provide additional facts that support its allegation that Defendants breached their duty of loyalty.

Relatedly, Defendants argue that the aiding and abetting claim must be dismissed because the claim for breach of duty of loyalty was not adequately pled. (Doc. # 27 at 15-16). "A cause of action for aiding and abetting requires," among other elements, "an underlying violation on the part of the primary wrongdoer." Wiand v. Wells Fargo Bank, N.A., 938 F. Supp. 2d 1238, 1244 (M.D. Fla. Apr. 5, 2013). Therefore, as the Court has determined that Plaintiff did not plausibly allege a claim

for breach of the duty of loyalty, it will also dismiss the claim for aiding and abetting this breach without prejudice.

Counts VII and VIII are dismissed without prejudice.[2]

**B.   Tortious Interference Claims**

Defendants argue that Count V, alleging tortious interference with Plaintiff's advantageous business relationships, and Count VI, alleging tortious interference with enforceable restrictive covenant agreements, must also be dismissed because Plaintiff has only offered "a recital of the elements of a cause of action for tortious interference" in each count. (Doc. # 27 at 12-14). The Court agrees.

To plead tortious interference with a business relationship under Florida law, a plaintiff must allege "(1) the existence of a business relationship[;] . . . (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the

---

[2] Additionally, the Court notes that Count VII was alleged against "[t]he Individual Defendants — including, but not limited to, Centrone and Prusik." (Doc. # 9 at ¶ 138). If Plaintiff files an amended complaint, Plaintiff must specify which Defendants committed this conduct. See Weiland v. Palm Beach Cnty. Sheriff's Off., 792 F.3d 1313, 1323 (11th Cir. 2015) (noting that a complaint is subject to dismissal if it does not specify "which of the defendants the claim is brought against"). While Plaintiff's response to the Motion appears to clarify that this claim is made against all individual Defendants (Doc. # 36 at 15-16), the language included in the complaint does not provide sufficient notice to Defendants.

relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship." <u>Whetstone Indus. Inc. v. Yowie Grp. Ltd.</u>, No. 3:17-cv-HES-PDB, 2019 WL 13177819, at *2 (M.D. Fla. Aug. 15, 2019) (quoting <u>Ethan Allen, Inc. v. Georgetown Manor, Inc.</u>, 647 So. 2d 812, 814 (Fla. 1994)).

Similarly, to plead tortious interference with a contractual relationship under Florida law, a plaintiff must allege "(i) the existence of a contract; (ii) the defendant's knowledge thereof; (iii) the defendant's intentional and unjustified procurement of a breach thereof; and (iv) damages." <u>Sun Life Assurance Co. of Canada v. Imperial Premium Fin., LLC</u>, 904 F.3d 1197, 1215 (11th Cir. 2018).

While the complaint includes allegations related to each element of the tortious interference claims, these allegations are insufficient. Plaintiff does not include enough factual allegations as to all elements to make these claims plausible. Importantly, Plaintiff does not outline the actions taken by Defendants that constitute interference or unjustified procurement. Therefore, these claims must also be dismissed without prejudice. <u>See</u> <u>Twombly</u>, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do.").

Defendants further argue that Count V, for tortious interference with advantageous business relationships, must be dismissed because it fails to allege harm to a business relationship. (Doc. # 27 at 13-14). "An integral element of a claim of tortious interference with a business relationship requires proof of damage to the plaintiff as a result of the breach of the relationship." Worldwide Primates, Inc. v. McGreal, 26 F.3d 1089, 1091 (11th Cir. 1994) (citing Tamiami Trail Tours, Inc. v. Cotton, 463 So. 2d 1126, 1127 (Fla. 1985)). Plaintiff must plead actual harm, "as opposed to merely a suspicion or unsupported and speculative supposition of harm." Adams Arms, LLC v. Unified Weapons Sys., Inc., No. 8:16-cv-1503-VMC-AEP, 2017 WL 519273, at *6 (M.D. Fla. Feb. 8, 2017) (citing Realauction.com, LLC v. Grant St. Grp., Inc., 82 So. 3d 1056, 1058 (Fla. 4th DCA 2011)).

In Count V, Plaintiff states that it "has advantageous business relationships with its employees and its current and prospective customers and vendors in its market area." (Doc. # 9 at ¶ 121). The Court agrees that this statement includes some relationships that are not protected by Florida law. "A protected business relationship need not be evidenced by an

enforceable contract. . . . However, the alleged business relationship must afford the plaintiff existing or prospective legal or contractual rights." <u>St. Johns River Water Mgmt. Dist. v. Fernberg Geological Servs., Inc.</u>, 784 So. 2d 500, 504 (Fla. 5th DCA 2001) (citations and internal quotation marks omitted). "As a general rule, an action for tortious interference with a business relationship requires a business relationship evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered." <u>Ethan Allen, Inc.</u>, 647 So. 2d at 815.

Therefore, while Plaintiff may be able to assert a claim for tortious interference with a business relationship as to relationships with some of its current customers and vendors, Plaintiff will not be able to state a claim as to its relationships with "prospective customers and vendors" if Plaintiff has not reached an "actual and identifiable understanding or agreement" with these entities. <u>See Id.</u>

Counts V and VI are dismissed without prejudice.

**C.** **<u>Punitive Damages</u>**

Finally, Defendants argue that Plaintiff's claim for punitive damages under FDUTPA in Count IX must be dismissed or stricken because FDUTPA does not allow awards of punitive

damages. (Doc. # 27 at 16). "A claim for punitive damages is outside the scope of . . . the FDUTPA." Rollins, Inc. v. Heller, 454 So. 2d 580, 585 (Fla. 3d DCA 1984). "Accordingly, any award of punitive damages based upon a violation of FDUTPA would be improper absent some independent basis such as fraud." Id. at 586.

Plaintiff argues that an independent basis exists here based on Plaintiff's claims of a violation of the Florida Uniform Trade Secrets Act, tortious interference, and breach of fiduciary duty. (Doc. # 36 at 17). However, while Plaintiff may seek punitive damages under other causes of action that provide for such damages, Plaintiff may not seek punitive damages under FDUTPA. See Crmsuite Corp. v. Gen. Motors Co., No. 8:20-cv-762-WFJ-AAS, 2020 WL 5898970, at *4 n.2 (M.D. Fla. Oct. 5, 2020) ("[P]unitive damages are outside the scope of FDUTPA."). Therefore, Plaintiff's claim for punitive damages under FDUTPA is dismissed with prejudice.

Accordingly, it is

**ORDERED**, **ADJUDGED**, and **DECREED**:

(1) Defendants Microchip USA LLC, Trevor Toma, Jeff Ruby, Joshua Arnold, Jake Lawless, Alexander Hart, Mitchell Kogge, Tyler Ayala, Paul Venzor, Thomas Andrew Van de Motter, Kimie Koga, John Brown, and Michael Prusik's

22

Motion to Dismiss Complaint or for More Definite Statement (Doc. # 27) is **GRANTED.**

(2) Counts I-VIII are **DISMISSED** without prejudice. Plaintiff's claim for punitive damages in Count IX is **DISMISSED** with prejudice.

(3) Plaintiff Direct Components, Inc. may file an amended complaint within 14 days from the date of this Order.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>2nd</u> day of May, 2024.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE